UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEVI J. LAMBERT,

        Plaintiff,

v.

        Case No. 1:12-cv-374
        Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on August 20, 1987 (AR 181).[1] He alleged a disability onset date of December 20, 2007 (AR 181). Plaintiff graduated from high school and had previous employment as a stocker in a grocery store (AR 173). Plaintiff identified his disabling conditions as Aspergers, depression and anxiety (AR 173). Plaintiff stated that due to these conditions he has trouble working with other people (AR 173). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on November 8, 2010 (AR 10-18). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of December 20, 2007 and that he met the insured status requirements under the Act through June 30, 2009 (AR 12). Second, the ALJ found that plaintiff has the following severe impairments: anxiety disorder; Asperger's syndrome; and depression (AR 12). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 12). Specifically, plaintiff did not meet the requirements of Listings 12.04 (affective disorders), 12.06 (anxiety related disorders) or 12.10 (autism disorders and other pervasive developmental disorders) (AR 12).

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exerlional leve1s but with the following nonexertional limitations: the claimant is limited to routine, repetitive and concrete tasks with no interaction with the public and only occasional interaction with coworkers.

(AR 14). The ALJ also found that plaintiff has no past relevant work (AR 17).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at all exertional levels (AR 17). Specifically, plaintiff could perform the following unskilled jobs in the national economy: janitor (1,100,000 jobs); dishwasher (277,000 jobs); and groundskeeper (167,000 jobs) (AR 17). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from December 20, 2007 (the alleged onset date) through November 10, 2010 (the date of the decision) (AR 18).

4

### III. ANALYSIS

Plaintiff raised four issues on appeal.

**A. The claimant contends that the ALJ failed to give due weight to the opinions of his treating professionals, medical and psychological, as required by 20 CFR 404.1527(d)(2).**

**1. Medical records not placed in evidence**

Plaintiff contends that the ALJ improperly relied on the opinions the agency's non-examining psychologist, Joe DeLoach, Ph.D., and disregarded the opinions of a number of treating physicians and psychologists, including James Benthem, Ph.D., Karen Olson, M.D., Susan Betts-Barbus, M.D., James Whelan, M.D., Daniel Schellenberg, M.D. *See* Plaintiff's Brief (docket no. 11); Plaintiff's Reply Brief (docket no. 13). While reviewing plaintiff's briefs in this matter, it became apparent to the Court that he relief heavily upon medical records identified as Exhibits 12F through 18F. These records were not part of the administrative record reviewed by the ALJ, but rather were new evidence which plaintiff's counsel presented for the first time to the Appeals Council.

The transcript of the administrative hearing reflects that Exhibits 1F through 11F were admitted during the hearing held on October 27, 2010 (AR 26, 241-305). After the ALJ admitted the evidence she asked plaintiff's counsel:

ALJ: And you indicated that we're not waiting for any additional written evidence of any updates?

ATTY: No.

(AR 26). In her decision denying benefits entered on November 8, 2010, the ALJ referred to the records of three treating medical sources, Dr. Benthem, Dr. Betts-Barbus and Dr. Schellenberg, whose records were contained in Exhibits 1F through 11F.

After the ALJ entered her decision, plaintiff's counsel submitted additional evidence to the Appeals Council. The new evidence is outlined in a letter dated December 21, 2010:

> The claimant submits the following new evidence that was not in the case record at the time of the ALJ hearing. [Plaintiff's] attorney was given a disk containing the case file records on the day of the hearing, but the computers in the hearing room were not functioning properly. Evidence in the files of the referring state agency were apparently not forwarded to the Office of Disability Appeal and Review. In addition, a psychiatric evaluation by Dr. Shellenberg [sic] was incomplete, lacking the middle two pages. A list of the new evidence follows.
>
> 1. List of psychotherapy sessions, James Benthem, PhD., 2008-2010.
>
> 2. Psychiatric Evaluation, Karin E. Olson, M.D., 8/4/94.
>
> 3. Psychological Testing Report, James Benthem, PhD., 6/11/94. (???) [sic]
>
> 4. Medical Examination Report to state agency, James R. Whelan, M.D., 9/2/08.
>
> 5. Mackinaw Trail Pediatrics records (Dr. Betts-Barbus), 1995-2005.
>
> 6. Cadillac Family Physicians records (Dr. Whelan), 2006-2008.
>
> 7. North Central Community Mental Health records, 1999-2000.
>
> 8. Psychiatric Evaluation Summary, Daniel Shellenberg [sic], M.D., 7121/00. [Note: the first and last pages of this document were shown on the disk of records but the middle pages were omitted.]

(AR 317). Based on counsel's correspondence, and a review of the administrative record, the medical records referred to in plaintiff's December 21, 2010 letter were subsequently identified as Exhibits 12F through 18F (AR 306-63).

When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir.1988). Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.* "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006). "[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996).

Here, plaintiff does not request a sentence-six remand for consideration of Exhibits 12F through 18F. In addition, he has not demonstrated that the new evidence is material or that there is good cause for the failure to incorporate such evidence into the record (the evidence all pre-dated

the hearing). Accordingly, the Court will neither review this new evidence nor grant a sentence-six remand with respect to that evidence.

### 2. ALJ's review of the treating physicians

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). If a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case," then the agency will give the opinion controlling weight. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). An ALJ, however, is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246

8

F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d at 287. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Here, plaintiff contends that the ALJ erred by failing to properly weigh the opinions of medical providers who have treated plaintiff since he was a child, and by giving great weight to the opinion of Dr. DeLoach, the agency's non-examining consultant. Given the scope of plaintiff's argument, the Court will reproduce the ALJ's discussion of plaintiff's medical history and her evaluation of the medical evidence:

> The claimant testified that while he had no physical impairments that prevented him from working, he was unable to work due having difficulty while working with others and dealing with change. The claimant's difficulty with change was discussed in detail during the testimony of his parent's, Carol and James Lambert. They provided observations about the claimant's basement living quarters and daily chores (Testimony). The testimony of Sheila Johnson Keller discussed the claimant's limitations and impairments and how they affected him during high school (Testimony). Ms. Johnson Keller's completed 3rd Party Function Report from September 2, 2008 and also opined that the claimant's condition makes it difficult for him to interact with a people he is unfamiliar with (Exhibit 3E).
>
> \*   \*   \*
>
> In terms of the claimant's alleged Asperger's syndrome and anxiety disorder, while these conditions are essentially of a permanent nature, the claimant is able to understand, retain and follow simple instructions as determined by the October 18, 2008 examination by James R. Findley, Ph.D., L.P. (Exhibit 7F). The examination performed by Dr. Findley found the claimant to be pleasant and cooperative with good grooming and hygiene and generally logical (Exhibit 7F). During the exam,

9

the claimant was generally mood congruent, exhibited no obvious symptoms of anxiety and reported no evidence of psychotic process (Exhibit 7F).

The claimant's general I.Q. is 114, within the high average range of intellectual functioning, as determined by Dr. George J. Drozd during an April 28, 2005 competency evaluation (Exhibit 2F). This is consistent with the testimony of Sheila Johnson Keller, a former teacher and friend of the claimant, who characterized the claimant as "very intelligent" (Exhibit 7F). Additional testing performed in conjunction with the above evaluation revealed that his test scores on the Vineland Adaptive Behavior Scale were age appropriate (Exhibit 2F). Specifically, testing in the domains of daily living skills which assess personal care skills, domestic capability and community living skills, the claimant achieved a 17.6 year level, and the socialization domain which measures capacity to cope with environmental demands and expectations and capacity for interpersonal relationships the claimant score suggests a functional level of a 17.0 year old. The age of the claimant at the time of testing was 17 years and 8 months. The assessment results did not warrant the assignment of even a partial guardian (Exhibit 2F).

The results from the above stated testing are generally consistent with the claimant's statements that he is able to perform normal activities of daily living with no problems in the areas of personal care, meal preparation, getting around and performing house and yard work (Exhibit 5E). The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.

Regarding the claimant's alleged impairment of depression, the claimant has been prescribed and has taken appropriate medications for depression, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms (Exhibit 7F). The record indicates no significant reactions or side effects to the claimant's prescriptive treatments.

The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. The medical evidence of record indicates that despite having an evaluation and diagnosis of Asperger's Syndrome at age 12, there is a lack of specialized, longitudinal treatment involving this or any of the other alleged impairments (Exhibit 1F). The 2005 letter written by the claimant's childhood pediatrician, Dr. Susan Betts-Barbus, indicates concern for the claimant's judgment regarding medical treatment based on having seen the claimant's "tantrums" on multiple occasions (Exhibit 3F). Prior to the treatments by Dr. Bentham [sic], which were made after the October 28, 2008 request for hearing, it appears that the claimant never sought or received treatment from a specialist (Exhibit 7F). Outside of the treatment by Dr. Bentham [sic], all treatment of these allegedly disabling impairments were last rendered in June 2008 by a general

practitioner (Exhibits 3F, 4F). This fact, coupled with the fact of the claimant's ability to perform work as described above strongly suggest that the impairments do not prevent the claimant working as outlined in the residual functional capacity. In any event, the claimant has not required inpatient, emergency, or partially hospitalized care, and does not suffer from suicidal ideation, homicidal ideation, or psychosis.

The opinion of Dr. Benthem that the claimant is moderately to markedly impaired in the areas of activities of daily living and concentration, persistence and pace while being moderately to extremely impaired in the areas of social functioning and episodes of decompensation is given less weight (Exhibit 11F). Although certain aspects of the doctor's opinion are in fact consistent with the residual functional capacity determined in this decision, there is a lack of longitudinal treatment as stated above and inconsistency with the record as a whole. Dr. Bentham began treating the claimant on July 16, 2009 and the letter submitted to the medical evidence of record was dated October 9, 2009, less than three months after the claimant's first visit (Exhibit 11F). There were no additional treatment records or updates since that date. Further, this opinion is not well-supported by the mental status examination findings, which have been relatively good, and demonstrate high intelligence and pleasant demeanor. Finally, the opinion is not consistent with the range of activities of daily living the claimant can perform. As noted, the claimant has significant assistance from his family for many activities of daily living, but is nonetheless able to travel, shop, and visit in some circumstances independently.

The opinion of the consultative examiner, James R. Findley Ph.D., L.P., that the claimant is able to understand, retain and follow simple instructions but is restricted to working in familiar places with familiar people and performing routine, repetitive, concrete tasks is given significant weight. It is more consistent with the objective I.Q. and Vineland Adaptive Behavioral Scale testing results stated above, and medical record as a whole, and supports my findings of the residual functional capacity (Exhibit 7F). I note that this opinion is consistent with the claimant's activities of daily living, and further, is consistent with the conservative and relatively limited course of treatment. Similarly, the opinion provided by the State agency medical consultant, Joe DeLoach, Ph.D., has also been considered and given great weight (Exhibits 7F-9F). State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act. In this instance, the opinion is well-supported by the medical evidence of record and is consistent with the record as a whole, as discussed relative to the opinion provided by Dr. Findley.

(AR15-16).

The record reflects that the ALJ reviewed the opinions of three treaters, Dr. Schellenberg, Dr. Betts-Barbus and Dr. Benthem but failed to assign weight to their opinions.[2] The ALJ's failure to determine the weight given to these three treaters is contrary to the regulations, which require that the agency determine the weight of opinion evidence provided by treating physicians:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Furthermore, the July 21, 2000 report of Dr. Schellenberg which was reviewed by the ALJ (Exh. 1F) (AR 241-43) is incomplete, missing half of its pages. Compare (AR 242-43) with (AR 336-39).

Accordingly, the ALJ's decision must be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should re-evaluate the complete July 21, 2000 report of Dr. Schellenberg as well as the opinions of Dr. Betts-Barbus and Dr. Benthem and assign weight to the opinions consistent with the regulations.

**B.  Claimant contends that he meets or equals the paragraph B criteria of Listing 12.04, affective disorders, and also the paragraph C paragraph.**

---

[2] While the ALJ stated that she gave some of Dr. Benthem's opinions "less weight," she did not explain the meaning of that term in the context of the other medical opinions.

> **C.** **[Claimant] contends that he meets or equals the paragraph B criteria of Listing 12.06, anxiety-related disorders, and also the paragraph C criteria.**
>
> **D.** **[Claimant] contends that he meets or equals the paragraph B criteria of Listing 12.10, autistic disorder or other pervasive developmental disorders.**

Plaintiff contends that the ALJ failed to properly address whether he met the requirements of three listed impairments, Listings 12.04, 12.06 and 12.10. A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in all of the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d) and 416.925(d). "When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004). *See also Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987) (a claimant does not satisfy a particular listing unless all of the requirements of the listing are present). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d).

Here, the ALJ relied heavily upon the opinions of the agency's non-examining consultant in reaching the determination that plaintiff did not meet the requirements of Listings 12.04, 12.06 and 12.10. However, because the ALJ did not properly evaluate the opinions of plaintiff's treating physicians, her review of the listed impairments was not supported by substantial evidence. Accordingly, on remand, the Commissioner should re-evaluate whether plaintiff met the requirements of Listings 12.04, 12.06 and 12.10.

## IV. CONCLUSION

The ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should re-evaluate the complete July 21, 2000 report of Dr. Schellenberg as well as the opinions of Dr. Betts-Barbus and Dr. Benthem and assign weight to the opinions consistent with the regulations. In addition, the Commissioner should re-evaluate whether plaintiff met the requirements of Listings 12.04, 12.06 and 12.10. A judgment consistent with this opinion shall be issued forthwith.

Dated: September 25, 2013 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge